Robert W. Mauriello, Jr.
Robin Rabinowitz
GIMIGLIANO MAURIELLO & MALONEY
A Professional Association
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
(973) 946-8360
Attorneys for Plaintiffs
Oaklyn Villas Urban Renewal LLC and
DePetro Real Estate Organization LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| OAKLYN VILLAS URBAN RENEWAL LLC and DePETRO REAL ESTATE ORGANIZATION LLC,<br><br>                 Plaintiffs,<br><br>       v.<br><br>BOROUGH OF OAKLYN; GREGORY BRANDLEY; CHARLES LEHMAN; DOROTHY VALIANTI; BONNIE L. TAFT; TIMOTHY J. HIGGINS; PETER RHODES; AJAY SHAH; ALKA REAL ESTATE LLC; and DOUG KOLTAN<br><br>                 Defendants. | Civil Action No.:<br><br><br><br><br><br><br>CIVIL ACTION<br><br>COMPLAINT AND JURY DEMAND |

Plaintiffs Oaklyn Villas Urban Renewal LLC ("Oaklyn Villas") and DePetro Real

Estate Organization LLC ("DePetro"), with principal offices located at 201 Union Lane, Suite B,

Brielle, New Jersey 08730, hereby state as follows by way of Complaint against defendants

Borough of Oaklyn (the "Borough"), Gregory Brandley ("Mayor" or "Brandley"), Charles

Lehman ("Lehman"), Dorothy Valianti ("Valianti," and together with the Mayor and Lehman,

the "Ad Hoc Committee"), Bonnie L. Taft ("Taft" or "Borough Clerk"), Doug Koltan, with

1

offices located at 500 White Horse Pike, Oaklyn, New Jersey 08107, Timothy J. Higgins

("Higgins" or "Borough Attorney"), with principal offices located at 30 South Haddon Avenue,

Haddonfield, New Jersey 08033, Peter Rhodes, with principal offices located at Cahill, Wilinsky,

Rhodes, and Joyce, 89 North Haddon Avenue, Haddonfield, New Jersey 08033, Ajay Shah and

ALKA Real Estate LLC ("ALKA"), with offices located at 210 White Horse Pike, Oaklyn, New

Jersey 08107:

NATURE OF THE ACTION

1.       Oaklyn Villas brings this civil-rights action under 42 U.S.C. § 1983 and

New Jersey state law because the Borough, the Mayor, the Borough Council, the Borough Clerk,

and the Borough Attorney have deprived Oaklyn Villas of its constitutionally protected rights to

property and equal protection by irrationally and summarily denying Oaklyn Villas' request to

sell land within one of the Borough's redevelopment areas, and to transfer certain tax incentives

Oaklyn Villas was granted as redeveloper of that land, to a qualified purchaser.

2.       As explained in detail below, Defendants' decisions are at best arbitrary

and capricious and at worst are motivated by discriminatory and Anti-Semitic bias against

Oaklyn Villas' proposed purchaser, whose principal is of the Orthodox Jewish faith.

3.       Furthermore, Defendants breached the contracts between the Borough and

Oaklyn Villas when they refused to transfer the land and tax incentives to a qualified purchaser.

4.       The rights at issue in this case concern an affordable housing project

located at 208 White Horse Pike ("Oaklyn Manor") within the Borough's White Horse Pike

Redevelopment Area.  After being designated as the redeveloper of Oaklyn Manor, Oaklyn

Villas acquired the Oaklyn Manor by condemnation and entered into a Financial Agreement for a

tax PILOT guaranteeing thirty years of stable taxes with the Borough.  Over the ensuing years,

2

Oaklyn Villas rehabilitated Oaklyn Manor at considerable cost and expense and fulfilled all of its obligations for the redevelopment.

5.     After spending in excess of $2 million on improvements, the Borough's legal fees, a settlement with the previous owner of Oaklyn Manor and having completed the redevelopment in its entirety six years ago, Oaklyn Villas entered into a contract to sell Oaklyn Manor and transfer the Financial Agreement to Success Estates, LLC.

6.     In accordance with the terms of the Redeveloper Agreement and the Financial Agreement, Oaklyn Villas sought the Borough's consent to the sale and transfer of the Financial Agreement.  Despite receiving voluminous documents regarding the proposed transaction and interviewing the principal of the Purchaser, the Borough Council summarily denied Oaklyn Villas' request without any public disclosure of the discussions or regard for the stated purposes of the Financial Agreement.

7.     From the time the Borough was notified of the proposed transaction through to the Borough's summary rejection of Plaintiff's request, Defendants obstructed Plaintiff's access to the decision-makers, obscured the standards being applied, and failed to provide any rationale for their decisions.  Additionally, Defendants have breached their contract and the duty of good faith and fair dealing with regard to the replacement of signage on property adjacent to Oaklyn Manor, inflicting further harm on Plaintiff by placing additional barriers in the way of the sale of Oaklyn Manor.  Moreover, Defendants deprived Plaintiff of its property and equal protection rights, and breached the Borough's contracts with the Plaintiff, in service of their irrational, unlawful, and biased animus toward the Purchaser.  Furthermore, the irrational, arbitrary and capricious conduct of the Borough's tax assessor deprived Plaintiff of the tax benefits conferred by the Financial Agreement, while also causing a substantial loss of revenue

to the Borough.  This lawsuit seeks to remedy the substantial harm already inflicted by Defendants upon Plaintiff by permitting the sale of the Property and the transfer of the Financial Agreement to go forward, thereby allowing the Purchaser to contribute to the White Horse Pike neighborhood and allowing Plaintiff to sell its investment to a fully-qualified Purchaser of the Jewish faith.

<u>PARTIES</u>

8.      Oaklyn Villas Urban Renewal, LLC is a New Jersey urban renewal limited liability company with its principal offices at DePetro Real Estate Organization LLC, 201 Union Lane, Suite B, Brielle, New Jersey 08730.

9.      DePetro Real Estate Organization LLC is a limited liability company organized under the laws of the State of New Jersey with its principal offices at 201 Union Lane, Suite B, Brielle, New Jersey 08730.

10.     The Borough of Oaklyn is a municipal corporation of the State of New Jersey having its principal place of business at 500 White Horse Pike, Oaklyn, New Jersey 08107.

11.     Gregory Brandley, an individual, is the Mayor of the Borough of Oaklyn whose principal office is located at 500 White Horse Pike, Oaklyn, New Jersey 08107.  Upon information and belief, Brandley is not of the Jewish faith.

12.     Charles Lehman, an individual, is a member of the Borough Council and Director of Recreation & Senior Activities of the Borough of Oaklyn, whose principal office is located at 500 White Horse Pike, Oaklyn, New Jersey 08107.  Upon information and belief, Lehman is not of the Jewish faith.

13.     Dorothy Valianti, an individual, is a member of the Borough Council and Director of Public Safety of the Borough of Oaklyn, whose principal office is located at 500 White Horse Pike, Oaklyn, New Jersey 08107.  Upon information and belief, Valianti is not of the Jewish faith.

14.     Bonnie L. Taft, an individual, is the Municipal Clerk, Administrator and Chief Financial Office of the Borough of Oaklyn, whose principal office is located at 500 White Horse Pike, Oaklyn, New Jersey 08107.  Upon information and belief, Bonnie L. Taft is not of the Jewish faith.

15.     Timothy J. Higgins, an individual, is the Borough Attorney for the Borough of Oaklyn, whose principal office is located at 30 South Haddon Avenue, Haddonfield, New Jersey 08033.  Upon information and belief, Timothy J. Higgins is not of the Jewish faith.

16.     Peter Rhodes, an individual, is an attorney with the firm of Cahill, Wilinsky, Rhodes and Joyce, whose principal office is located at 89 North Haddon Avenue, Haddonfield, New Jersey 08033.

17.     Ajay Shah, an individual, is the managing member of ALKA Real Estate LLC, whose principal office is located at 210 White Horse Pike, Oaklyn, New Jersey 08107.

18.     ALKA Real Estate LLC is a limited liability company organized under the laws of the State of New Jersey whose principal office is located at 210 White Horse Pike, Oaklyn, New Jersey 08107.

19.     Doug Koltan, an individual, is the former municipal tax assessor for the Borough of Oaklyn, whose principal office is located at 500 White Horse Pike, Oaklyn, New Jersey 08107.  Upon information and belief, Doug Koltan is not of the Jewish faith.

JURISDICTION AND VENUE

20.    This action is brought under 42 U.S.C. § 1983 and state law.  The court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

21.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because all of the Defendants are residents of the State of New Jersey and all of the events, acts and omissions giving rise to the claims in this matter occurred in Oaklyn, New Jersey, which is within this District.

OAKLYN VILLAS' REDEVELOPMENT OF OAKLYN MANOR

22.    On or about March 11, 2003, the Borough adopted its Redevelopment Plan for Block 49, Lots 4, 5 and 6, in the Borough of Oaklyn, County of Camden and State of New Jersey (the "Redevelopment Plan").  One of the objectives of the Redevelopment Plan was the historic restoration of the multi-family building located at 208 White Horse Pike and the development of parking areas on Lot 4 at the rear portion of Block 49, Lot 6.

23.    The owner of the building made sporadic attempts at remodeling and repair, but by 2013 the work remained mostly incomplete and had not successfully brought the building back to habitable condition.  An independent investigation conducted by an engineering firm determined that "discontinuance of use over an extended period has rendered the building [Oaklyn Manor] untenantable," that Oaklyn Manor was "diplidat[ed]" and that there were "unsafe conditions" on the site.

24.    On or about August 13, 2013, the Borough determined that the White Horse Pike Project Area was an area in need of redevelopment.  An architectural firm estimated that it would cost more than $600,000 to rehabilitate Oaklyn Manor.

25.     Also in 2013, Richard DePetro, the principal of the Plaintiff, was introduced to the then-Mayor of Oaklyn, Robert Forbes, when Forbes visited Wellwood Manor, a 54-unit affordable housing project that Mr. DePetro had just finished redeveloping for the Borough of Merchantville, in order to evaluate his ability to complete a similar restoration project in Oaklyn.

26.     On or about October 24, 2014, DePetro and the Borough entered into a Redeveloper Agreement for White Horse Pike Redevelopment Area, Oaklyn, New Jersey (the "Redeveloper Agreement").

27.     On or about March 4, 2015, Oaklyn Villas acquired Oaklyn Manor by condemnation initiated by the Borough.  However, because of intervening litigation with the prior owner, the amount of just compensation was not finally determined until July 2016. Oaklyn Villas ultimately paid a total of $600,000 for Oaklyn Manor, more than triple the Borough's estimate of just compensation for the property.

28.     Pursuant to the Redeveloper Agreement, Oaklyn Villas also paid approximately $168,000 of Borough legal fees from the condemnation action.

29.     On or about November 10, 2015, Oaklyn Villas and the Borough entered into a "Financial Agreement Pursuant to the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1, et seq. between the Borough of Oaklyn and Oaklyn Villas Urban Renewal, LLC" (the "Financial Agreement").

30.     In the Financial Agreement, the Borough explicitly found that "the redevelopment of the Project creates a substantial benefit to the Borough, when compared to costs, if any, associated with the tax exemption granted herein and, further, finds that such tax

exemption is of significant importance in obtaining the development of the Project and in influencing the locational decisions of probable occupants of the Project."

31.     The Financial Agreement explicitly contemplated the sale of Oaklyn Manor, as it required that "in consideration for the aforesaid exemption from taxation on improvement(s), the Entity, *it[s] successors and assigns* shall make payment to the Borough for municipal services supplied to the Project of an annual service charge . . ." (emphasis added).

32.     In the event that Oaklyn Villas wanted to sell Oaklyn Manor, the Financial Agreement required that "the assumption of the terms, conditions and obligations of this Agreement by the transferee urban renewal entity person, partnership and/or corporation, is approved by Resolution of the Borough Council of the Borough of Oaklyn, upon whose approval this Agreement and its then remaining obligations and the tax exemption of the improvements shall continue, and inure to the benefit of the transferee urban renewal entity."

33.     The Financial Agreement further provided that "the Borough may, on written application by the Entity, consent to a sale of the Project and the transfer of the Agreement to an urban renewal person, partnership and/or corporation eligible to function under the law provided the Entity is not in default as respects any performance required of it hereunder and full compliance with the terms and conditions of N.J.S.A. 40A:20-1, et seq. has occurred and the Entity's obligation under this Agreement with the Borough is assumed by the transferee."

34.     The Borough "shall be entitled to an administrative fee of two (2%) percent of the then-existing Annual Service charge, for the processing of any such request for the transferred its Project to another urban renewal entity."

35.     The Financial Agreement further allows that "[w]here approval or consent of the Borough is sought for an assignment of the Agreement, either the Entity or its assignee

8

shall be required to pay to the Borough a reasonable fee for the legal services of the Borough's Attorney, as determined by the Borough Attorney, related to the review, preparation, and/or submission of papers to the Borough Council for its appropriate action on the requested assignment."

36.     On or about May 10, 2016, Oaklyn Villas completed the redevelopment of Oaklyn Manor, at a cost of approximately $1.8 million—triple the architect's initial estimates— and the Borough issued a Certificate of Occupancy.

37.     On or about July 11, 2017, the Borough entered into an agreement with DePetro whereby the Borough would acquire a portion of the property adjacent to Oaklyn Manor, which was owned by an entity called ALKA Real Estate LLC ("ALKA"), and DePetro would construct a parking lot on the property for use by tenants of Oaklyn Manor.  DePetro further agreed to compensate ALKA by installing a sidewalk, an LED sign, and a fence on ALKA's remaining property.

38.     Oaklyn Villas incurred an additional $250,000 in acquisition and construction costs for the parking lot.

<u>OAKLYN VILLAS' REQUEST TO SELL OAKLYN MANOR</u>

39.     On or around June 22, 2021, Oaklyn Villas entered into a contract to sell Oaklyn Manor to Success Estates, LLC.  Success Estates, LLC is an affiliate of 208 White Horse Pike Urban Renewal LLC (the "Purchaser"), the urban renewal entity that would actually take ownership of Oaklyn Manor.

40.     Oaklyn Villas advised the Borough of its intention to sell Oaklyn Manor and to request a transfer of the Financial Agreement to the Purchaser.

41.     In October 2021, the Purchaser delivered materials describing the Purchaser's experience and qualifications to the Borough Clerk.

42.     On or around December 6, 2021, those same materials were hand-delivered to the Mayor and Borough Council during the Borough's Council's governing body meeting.

43.     Zev Censor, the managing member of the Purchaser and the CEO of Success Estates LLC, has the capital, financing and experience required to own and operate Oaklyn Manor for the benefit of the Borough.  Mr. Censor is of the Jewish faith.

44.     Mr. Censor's company, Success Estates LLC, has purchased, rehabilitated and sold nearly 75 properties since its founding in 2016.  The company also owns, operates and manages several rental properties, including a 40-unit apartment complex in Marlton, New Jersey.  The company is also under contract to purchase 1115 White Horse Pike and plans to do a full exterior and interior renovation.

45.     Mr. Censor also has experience managing affordable housing.  Success Estates LLC acquired the Colonial Court Apartments in Hammonton, New Jersey, which contains five affordable housing units. The firm administering compliance on behalf of Hammonton determined that Mr. Censor's company has the knowledge and skill set required to manage affordable housing.

46.     The Mayor appointed himself, Lehman and Valianti to an Ad Hoc Committee to investigate the Purchaser's application.

47.     The Ad Hoc Committee met with Mr. Censor, his attorney, and the Plaintiff on February 10, 2022.

48.     The Borough scheduled a discussion of Oaklyn Villas' request to sell Oaklyn Manor and transfer the Financial Agreement for the Borough Council's April 4, 2022 caucus meeting.

49.     The Mayor, Borough Council, Borough Clerk and Borough Attorney discussed the request in a closed session that was not open to the public.

50.     On April 12, 2022, the Ad Hoc Committee presented its recommendation to the Borough Council.

51.     Based on the documents provided to the Ad Hoc Committee and the Ad Hoc Committee's interview with Mr. Censor, the Borough resolved that "the Purchaser LLC and its principal, Mr. Zev (Willi) Censor, are competent in the field of commercial real estate ownership and apartment management."

52.     Despite this finding, the Borough further resolved that transfer of the Financial Agreement "is not in the best interests of the Borough of Oaklyn."

53.     The Borough based this conclusion on its belief that "the Purchaser LLC and the Seller LLC have demonstrated no public policy basis for property tax assistance for a fully functional commercial property to be acquired by the Purchaser LLC at fair market value, in which the amount payable under the Financial Agreement would be less than twenty (20%) percent of the amount due if the Property were subject to ad valorem property taxation."

54.     The delay in consummation of the transaction has already caused significant economic harm.  Mr. Censor was initially quoted an initial 3.5% interest rate on a mortgage for Oaklyn Manor.  However, interest rates have shot upwards while Defendants have withheld approval for the transaction.  As a result, the initial interest rate now being quoted is

4.75%.  This dramatic increase in rates will cost the Purchaser more than $23,000 annually for the first five years of the mortgage, causing both the Purchaser and seller damages.

## FIRST COUNT
### (Violation of Procedural Due Process Rights; 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution)

55.     Oaklyn Villas incorporates by reference each and every allegation contained in paragraphs 1 through 54 as if fully set forth herein.

56.     Title 42, United States Code, Section 1983, prohibits persons acting under color of law from depriving any person of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

57.     In relevant part, 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

58.     Plaintiff is a person protected by this statute, the United States Constitution, and law.

59.     Among Plaintiff's civil rights is the right not to be deprived of its property without due process of law, including the procedural due process rights protected under the Fourteenth Amendment to the United States Constitution.

60.     Plaintiff's rights include the right to use and enjoy its property, both real and personal, including its property rights in Oaklyn Manor and its redevelopment rights under the Financial Agreement.

61.     The actions of all Defendants, collectively and individually, acting under color of law in carrying out the actions detailed above in this Complaint, and pursuant to municipal policy, custom, or practice, have deprived Plaintiff of its property rights in Oaklyn Manor and its redevelopment rights under the Financial Agreement.

62.     Defendants deprived Plaintiff of its property rights when they rejected Plaintiff's request to sell Oaklyn Manor and transfer the Financial Agreement to the Purchaser.

63.     The procedures afforded to Plaintiff did not provide due process of law.

64.     The Mayor empaneled an Ad Hoc Committee to consider Plaintiff's request to transfer the Financial Agreement.  The Mayor did not provide any rationale explaining why he, Lehman and Valianti were appointed to the Ad Hoc Committee.  The Ad Hoc Committee was not governed by any established procedures, rules or regulations, and was not given any instructions, criteria, factors, or guidance on the facts and information it was required and/or permitted to consider, or the standards, regulations, and laws it was required to apply in making its recommendation.

65.     As a result, the Ad Hoc Committee failed to evaluate the effect of the proposed sale and transfer of the Financial Agreement on "influencing the locational decisions of probable occupants of the Project," which the Borough previously found to be justification for the tax exemption.  The Ad Hoc Committee also failed to evaluate the effect of the proposed sale and transfer on obtaining an operator for Oaklyn Manor.

66.     The Ad Hoc Committee based its decision entirely on its understanding of the costs of the tax exemption, without any reference to the benefits to the Borough of maintaining the tax exemption after the seller had invested millions of dollars to redevelop Oaklyn Manor.

67.     The Ad Hoc Committee apparently did not keep any records of its meeting with the Purchaser.

68.     Neither Plaintiff nor the Purchaser were provided with an opportunity to hear or respond to the Borough Council's April 4, 2022 discussion of Plaintiff's application, which was held in closed session and not memorialized in writing.

69.     The Borough Clerk has not published any minutes of the April 12, 2022 meeting at which the Ad Hoc Committee presented its recommendation to the Borough Council.

70.     The Ad Hoc Committee's failure to document its meeting with the Purchaser or provide a written recommendation, the Borough Council's discussion of Plaintiff's application in a closed sessions, and the Borough Clerk's failure to take minutes or otherwise document the closed session and the Ad Hoc Committee's recommendation significantly impede Plaintiff's ability to access any procedures for presentation of evidence to this Court and/or for appealing the Borough's rejection.

71.     Upon information and belief, Defendants have intentionally kept their analysis and explanation private because they know that the Purchaser is fully-qualified but need to avoid public scrutiny of their Anti-Semitic bias against the Purchaser and Mr. Censor, among other reasons.

72.     As a result of Defendants' arbitrary, capricious, irrational, willful, improper, and unlawful acts and omissions, which deprived Plaintiff of its property without due process of law, Plaintiff has suffered, and will continue to suffer, damages.

WHEREFORE, Oaklyn Villas demands the following relief against Defendants, jointly and severally:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Preliminary and permanent injunctive relief;

(d)     Interest;

(e)     Attorneys' fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988(b);

(f)     Costs of suit; and

(g)     Such other relief as the Court deems just and equitable.

**SECOND COUNT**
**(Violation of Substantive Due Process Rights; 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution)**

73.     Oaklyn Villas incorporates by reference each and every allegation contained in paragraph 1 through 72 as if fully set forth herein.

74.     Among Plaintiff's civil rights is the right not to be deprived of its property without due process of law, including the substantive due process rights protected under the Fourteenth Amendment to the United States Constitution.

75.     The actions of all Defendants, collectively and individually, acting under color of law in carrying out the actions detailed above in this Complaint, and pursuant to municipal policy, custom, or practice, have deprived Plaintiff of its property rights in Oaklyn Manor and its redevelopment rights under the Financial Agreement.

76.     Defendants' acts and omission have deprived Plaintiff of its property rights without due process of law, lacked any legitimate reason, were arbitrary, capricious, irrational, willful, improper, and unlawful, improperly motivated and conscience-shocking.

77.     Among other things, as detailed in this Complaint, Defendants have taken actions unrelated to any legitimate government objective motivated by an unreasonable, irrational, unlawful, and biased animus toward the Purchaser.

78.     Purchaser provided Defendants with documentation and granted an interview, establishing that Purchaser had the capital, financing, and experience necessary to own and operate Oaklyn Manor.

79.     In light of Purchaser's qualifications, there was no reason for Defendants to reject the transfer of the Financial Agreement to the Purchaser.  Instead, Defendants unlawfully rejected Purchaser based on their baseless, incorrect, and biased animus toward members of Censor's religion.

80.     The conduct described above was intentional and was intended to injure and harass Plaintiff and obstruct Plaintiff's full enjoyment of its property rights for reasons that were unjustifiable by any legitimate government interest, and shocks the conscience.

81.     As a result of Defendants' arbitrary, capricious, irrational, willful, improper, and unlawful acts and omissions, which deprived Plaintiff of its property without due process of law, Plaintiff has suffered, and will continue to suffer, damages.

WHEREFORE, Oaklyn Villas demands the following relief against Defendants, jointly and severally:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Preliminary and permanent injunctive relief;

(d)     Interest;

(e)     Attorneys' fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988(b);

(f)     Costs of suit; and

(g)     Such other relief as the Court deems just and equitable.

**THIRD COUNT**
**(Violation of Equal Protection Rights; 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution)**

82.     Oaklyn Villas incorporates by reference each and every allegation contained in paragraphs 1 through 81 as if fully set forth herein.

83.     Among Plaintiff's civil rights is the right to equal protection of the laws under the Fourteenth Amendment of the United States Constitution.

84.     The actions of all Defendants, collectively and individually, acting under color of law in carrying out the actions detailed above in this Complaint, and pursuant to municipal policy, custom, or practice, have treated Plaintiff unequally and have denied Plaintiff its right to equal protection under the laws.

85.     Defendants intentionally treated Plaintiff differently from others similarly situated.

86.     Defendants refused to transfer the Financial Agreement to Purchaser, and thereby grant Purchaser tax benefits based on their belief that "the amount payable under the Financial Agreement would be less than twenty (20%) percent of the amount due if the Property was subject to ad valorem property taxation."

87.     When Plaintiff applied to be the initial developer of the property, the Borough made written findings that "the redevelopment of the Project creates a substantial benefit to the Borough, when compared to costs, if any, associated with the tax exemption" and "that such tax exemption is of significant importance in obtaining the development of the Project and in influencing the locational decisions of probable occupants of the Project."

88.     In deciding whether to transfer the Financial Agreement, Defendants considered only the costs of the tax exemption, and not the benefits to the Borough, the importance of the tax exemption in obtaining an operator for Oaklyn Manor, or the importance of

17

the tax exemption in influencing the locational decisions of probably occupants of Oaklyn

Manor.  There is no rational basis for this unequal treatment of Plaintiff and the Purchaser by

Defendants.

89.     As a result of Defendants' arbitrary, capricious, irrational, willful,

improper, and unlawful acts and omissions, Plaintiff has suffered, and will continue to suffer,

damages.

WHEREFORE, Oaklyn Villas demands the following relief against Defendants,

jointly and severally:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Preliminary and permanent injunctive relief;

(d)     Interest;

(e)     Attorneys' fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988(b);

(f)     Costs of suit; and

(g)     Such other relief as the Court deems just and equitable.

**<u>FOURTH COUNT</u>**
**(Violation of Substantive Due Process Rights; N.J.S.A. 10:6-2(c), Article I, Paragraph 1 of
the New Jersey Constitution and the Fourteenth Amendment to the United States
Constitution)**

90.     Oaklyn Villas incorporates by reference each and every allegation

contained in paragraphs 1 through 89 as if fully set forth herein.

91.     N.J.S.A. 10:6-2(c) provides that "[a]ny person who has been deprived of

any substantive due process or equal protection rights, privileges or immunities secured by the

Constitution or laws of the United States, or any substantive rights, privileged or immunities

secured by the Constitution or laws of this State, or whose exercise or enjoyment of those

substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief."

92.     Plaintiff is a person protected by this statute, the United States Constitution, the New Jersey Constitution, and federal and state law.

93.     Among Plaintiff's civil rights is the right to not be deprived of its property without due process of law, including the substantive due process rights protected under the Fourteenth Amendment to the United States Constitution, as well as Article I, Paragraph 1 of the New Jersey Constitution and federal and state law.

94.     Plaintiff's rights include the right to use and enjoy its property, both real and personal, including its property rights in Oaklyn Manor and its redevelopment rights under the Financial Agreement.

95.     Plaintiff has property rights in and to Oaklyn Manor.

96.     The actions of all Defendants, collectively and individually, acting under color of law in carrying out the actions detailed above in this Complaint, and pursuant to municipal policy, custom, or practice, have deprived Plaintiff of its rights, privileges, and immunities secured by the Constitution or the laws of the United States, including having deprived Plaintiff of its property rights without due process of law, lacked any legitimate reason, were arbitrary, capricious, irrational, willful, improper, and unlawful, improperly motivated and conscience-shocking.

97.     Furthermore, Defendants, individually and collectively, acting under color of law, interfered with or attempted to interfere with Plaintiff's rights, by threats, intimidation or coercion, as alleged above in this Complaint.  Defendants, having made their deal with Oaklyn

Villas to redevelop Oaklyn Manor apparently will not allow Oaklyn Villas to transfer Oaklyn Manor under any circumstances despite the clear benefits of the transfer to the Borough, thereby coercing Oaklyn Villas to remain as the owner of the property and depriving Oaklyn Villas through Defendants' powers of its property rights.

98.     Among other things, as detailed above in this Complaint, Defendants have taken actions unrelated to any legitimate government objective motivated by an unreasonable, irrational, unlawful, and biased animus toward the Purchaser.

99.     The conduct described above was intentional and was intended to injure and harass Plaintiff and obstruct Plaintiff's full enjoyment of its property rights for reasons that were unjustifiable by any legitimate government interest, and shocks the conscience.

100.     As a result of Defendants' arbitrary, capricious, irrational, willful, improper, and unlawful acts and omissions, which were accompanied by threats, intimidation, or coercion, Plaintiff has suffered and will continue to suffer, damages.

WHEREFORE, Oaklyn Villas demands the following relief against Defendants, jointly and severally:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Statutory penalties under N.J.S.A. 10:6-2(c) and (e);

(d)     Preliminary and permanent injunctive relief;

(e)     Interest;

(f)     Attorneys' fees pursuant to N.J.S.A. 10:6-2(c) and (f);

(g)     Costs of suit; and

(h)     Such other relief as the Court deems just and equitable.

**FIFTH COUNT**

**(Violation of Equal Protection Rights; N.J.S.A. 10:6-2(c), Article I, Paragraph 1 of the New Jersey Constitution and the Fourteenth Amendment to the United States Constitution)**

101.    Oaklyn Villas incorporates by reference each and every allegation contained in paragraphs 1 through 100 as if fully set forth herein.

102.    Among Plaintiff's civil rights is the right to equal protection of the laws under the Fourteenth Amendment of the United States Constitution and Article I, Paragraph 1 of the New Jersey Constitution.

103.    The actions of all Defendants, collectively and individually, acting under color of law in carrying out the actions detailed above in this Complaint, and pursuant to municipal policy, custom, or practice, have treated Plaintiff unequally and have denied Plaintiff its right to equal protection under the laws.

104.    Defendants have intentionally treated Plaintiff differently from others similarly situated.

105.    There is no rational basis for this unequal treatment of Plaintiff by Defendants.

106.    As a result of Defendants' arbitrary, capricious, irrational, willful, improper, and unlawful acts and omissions, which were accompanied by threats, intimidation or coercion, Plaintiff has suffered, and will continue to suffer, damages.

WHEREFORE, Oaklyn Villas demands the following relief against Defendants, jointly and severally:

(a)    Compensatory damages;

(b)    Punitive damages;

(c)    Statutory penalties under N.J.S.A. 10:6-2(c) and (e);

(d)    Preliminary and permanent injunctive relief;

    (e)       Interest;

    (f)       Attorneys' fees pursuant to N.J.S.A. 10:6-2(c) and (f);

    (g)       Costs of suit; and

    (h)       Such other relief as the Court deems just and equitable.

## SIXTH COUNT
### (Breach of Doctrine of Fundamental Fairness)

107.    Oaklyn Villas incorporates by reference each and every allegation contained in paragraphs 1 through 106 as if fully set forth herein.

108.    The doctrine of fundamental fairness, also known as the fairness and rightness doctrine, serves to protect citizens against unjust and arbitrary governmental action and against governmental actions and procedures that tend to operate arbitrarily, and serves as a bulwark against government action that does not comport with commonly accepted standards of decency of conduct to which governments must adhere.  These doctrines embody the principle that arbitrary and unjust actions by persons acting under color of law are prohibited.

109.    The facts as alleged above in this Complaint establish that Defendants violated these principles of fundamental fairness/fairness and rightness.

110.    As a result of Defendants' arbitrary, capricious, irrational, willful, improper, and unlawful acts and omissions, which were accompanied by threats, intimidation or coercion, Plaintiff has suffered, and will continue to suffer, damages.

WHEREFORE, Oaklyn Villas demands the following relief against Defendants, jointly and severally:

    (a)       Compensatory damages;

    (b)       Punitive damages;

    (c)       Preliminary and permanent injunctive relief;

(d)     Interest;

(e)     Costs of suit; and

(f)     Such other relief as the Court deems just and equitable.

### SEVENTH COUNT
**(Breach of Contract)**

111.    Oaklyn Villas incorporates by reference each and every allegation contained in paragraphs 1 through 110 as if fully set forth herein.

112.    The agreements between Oaklyn Villas and the Borough constitute contracts under New Jersey law.

113.    The Borough has breached its contracts with Oaklyn Villas by wrongfully, arbitrarily and capriciously denying the transfer of Oaklyn Manor and the Financial Agreement to the Purchaser.

114.    The Borough, through the actions of its employee Doug Koltan, has also breached its contract with Oaklyn Villas by failing to assess Oaklyn Manor's tax obligations in accordance with the Financial Agreement.

115.    Under the Financial Agreement, Oaklyn Manor was to be exempt from taxation on land and improvements beginning on November 15, 2015 for a term of fifteen years from the completion of the entire Project, with options to renew the tax exemption for three separate option stages.  In consideration of the tax exemption, Oaklyn Villas is required to pay an Annual Service Charge not less than the Minimum PILOT Payments listed in Exhibit D to the Financial Agreement.

116.    The Project was substantially completed on or about April 18, 2016.

117.    Upon information and belief, Doug Koltan, on the advice of as yet unidentified employees of the Borough, did not implement the Financial Agreement until October 2021.

118.    In 2016 through 2021, Oaklyn Villas paid a total of $84,146 in property taxes.  However, the Minimum PILOT Payments for those years totaled only $77,259.  Thus, Oaklyn Villas overpaid by $6,887, in violation of the Financial Agreement.

119.    Furthermore, because the Minimum PILOT Payments would have gone entirely to the Borough, whereas the taxes assessed were split between the Borough and the County of Camden, the Borough lost approximately $56,546 in revenue due to the breach of the Financial Agreement.

120.    As a result of the Borough's breach of the contracts, Oaklyn Villas has suffered and will continue to suffer damages.

121.    As a result of the Borough's breach of the contracts, Oaklyn Villas is entitled to both a declaration that the Borough must consent to the sale of Oaklyn Manor and the transfer of the Financial Agreement and compensatory damages.

WHEREFORE, Oaklyn Villas demands judgment:

(a)    Declaring that the Borough's denial of Oaklyn Villas' request to sell Oaklyn Manor and transfer the Financial Agreement to the Purchaser is arbitrary, capricious, unreasonable, and unlawful;

(b)    Declaring that the Borough's denial of Oaklyn Villas' request to sell Oaklyn Manor and transfer the Financial Agreement to the Purchaser deprived Plaintiff of its property rights without due

process of law, and deprived Plaintiff of equal protection of the

laws;

(c)     Declaring that the Borough's denial of Oaklyn Villas' request to

sell Oaklyn Manor and transfer the Financial Agreement to the

Purchaser is invalid;

(d)     Ordering Defendants to consent to the sale of Oaklyn Manor and

the transfer of the Financial Agreement to Purchaser;

(e)     Awarding compensatory damages; and

(f)     Awarding such other relief as the Court deems just and proper.

## EIGHTH COUNT
### (Breach of Implied Duty of Good Faith and Fair Dealing)

122.    Oaklyn Villas incorporates by reference each and every allegation

contained in paragraphs 1 through 121 as if fully set forth herein.

123.    There is an implied duty of good faith and fair dealing in every contract,

including the contracts between Oaklyn Villas and the Borough.

124.    Oaklyn Villas has fulfilled all of its obligations under its contracts with the

Borough and properly sought consent to transfer Oaklyn Manor and the Financial Agreement in

accordance with the contracts.

125.    By acting in a wrongful, arbitrary and capricious manner, the Borough has

breached its duty of good faith and fair dealing to Oaklyn Villas by refusing to transfer the

Financial Agreement.

126.    The Borough has also breached its duty of good faith and fair dealing by

overcharging Oaklyn Villas from 2016 to 2021 based on the unsupported opinions of municipal

employees.

127.    As a result of the Borough's breach of its implied duty of good faith and fair dealing, Oaklyn Villas has suffered and will continue to suffer damages.

128.    As a result of the Borough's breach of the contracts, Oaklyn Villas is entitled to both a declaration that the Borough must consent to the sale of Oaklyn Manor and the transfer of the Financial Agreement and compensatory damages.

WHEREFORE, Oaklyn Villas demands judgment:

(a)    Declaring that the Borough's denial of Oaklyn Villas' request to sell Oaklyn Manor and transfer the Financial Agreement to the Purchaser is arbitrary, capricious, unreasonable, and unlawful;

(b)    Declaring that the Borough's denial of Oaklyn Villas' request to sell Oaklyn Manor and transfer the Financial Agreement to the Purchaser deprived Plaintiff of its property rights without due process of law, and deprived Plaintiff of equal protection of the laws;

(c)    Declaring that the Borough's denial of Oaklyn Villas' request to sell Oaklyn Manor and transfer the Financial Agreement to the Purchaser is invalid;

(d)    Ordering Defendants to consent to the sale of Oaklyn Manor and the transfer of the Financial Agreement to Purchaser;

(e)    Awarding compensatory damages; and

(f)    Awarding such other relief as the Court deems just and proper.

## NINTH COUNT
### (Violation of New Jersey Law)

129.    Oaklyn Villas incorporates by reference each and every allegation contained in paragraphs 1 through 128 as if fully set forth herein.

130.    As set forth above, the denial of the transfer request was arbitrary, capricious, unreasonable and otherwise unlawful under New Jersey law.

131.    As a result of Defendants' unlawful conduct, Oaklyn Villas has suffered and will continue to suffer damages.

WHEREFORE, Oaklyn Villas demands judgment:

(a)    Declaring that the Borough's denial of Oaklyn Villas' request to sell Oaklyn Manor and transfer the Financial Agreement to the Purchaser is arbitrary, capricious, unreasonable, and unlawful;

(b)    Declaring that the Borough's denial of Oaklyn Villas' request to sell Oaklyn Manor and transfer the Financial Agreement to the Purchaser deprived Plaintiff of its property rights without due process of law, and deprived Plaintiff of equal protection of the laws;

(c)    Declaring that the Borough's denial of Oaklyn Villas' request to sell Oaklyn Manor and transfer the Financial Agreement to the Purchaser is invalid;

(d)    Ordering Defendants to consent to the sale of Oaklyn Manor and the transfer of the Financial Agreement to Purchaser;

(e)    Awarding compensatory damages; and

(f)    Awarding such other relief as the Court deems just and proper.

## TENTH COUNT
### (Breach of Contract)

132.     Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 131 as if fully set forth herein.

133.     The agreement between and among the Borough, DePetro and ALKA constitutes a contract under New Jersey law.

134.     Under the contract, ALKA agreed to "fully cooperate with Oaklyn and DePetro in all aspects of this Agreement including, but not limited to, cooperation as necessary during the construction phase of the . . . replacement signage, the execution of any and all document necessary to effect the terms and conditions of the Agreement, and/or the execution of any and all documents necessary for any application to any regulatory authority to effect the terms and conditions of this Agreement."

135.     The Borough agreed to "[a]dopt such ordinances, if any, as may be required to permit the freestanding sign as relocated *pursuant to the terms of this Agreement*." (emphasis added).

136.     DePetro agreed to replace ALKA's sign "in such a way as to accommodate a new, two-sided LED sign measuring no more than 25 square feet, to be placed consistent with the requirements of the land use laws of the Borough of Oaklyn."

137.     Despite these clear limitations on DePetro's obligation to furnish a new sign, on the advice of Peter Rhodes, in January 2022 ALKA applied to the Borough for a variance because the sign it wanted to install exceeded the maximum size allowed by local ordinance and the maximum height allowed by local ordinance.  It also exceeded 25 square feet—the proposal indicated that the sign would measure 53 inches by 75 inches, or approximately 27.6 square feet.

28

138.    The Borough approved the variance in February 2022.

139.    In applying for and receiving the variance, and demanding that DePetro install a sign that exceeded the requirements laid out in the contract, ALKA breached the contract provision requiring it to "fully cooperate" with DePetro regarding the construction of the new sign.

140.    In granting a variance that would require DePetro to install a sign that did not conform to the terms of the agreement between the Borough, ALKA and DePetro, the Borough breached the contract provisions requiring it to adopt ordinances required to permit the relocation of the sign "pursuant to the terms of this Agreement."

141.    As a result of these breaches, Oaklyn Villas has suffered and will continue to suffer damages.

142.    As a result of these breaches, Oaklyn Villas is entitled to a declaration that DePetro is relieved of its obligation to replace ALKA's sign, that DePetro is not required to reimburse ALKA for the cost of installing its non-conforming sign, and that the Borough must merge that portion of ALKA's property where the parking lot was constructed into Block 49, Lot 8 on the Official Tax Map of Oaklyn so that the parking lot may be transferred to the Purchaser together with Oaklyn Manor.

WHEREFORE, DePetro demands judgment:

(a)    Declaring that ALKA breached its contract with DePetro by failing to cooperate with DePetro regarding the construction of the new sign;

(b)    Declaring that the Borough breached its contract with DePetro by authorizing ALKA to install a sign that did not conform with the terms of its agreement with DePetro;

(c)    Declaring that, as a result of these breaches, DePetro is not required to install a new sign for ALKA or to reimburse ALKA for its non-conforming sign;

(d)    Ordering the Borough to merge the parking lot into Block 49, Lot 8 on the Official Tax Map of Oaklyn;

(e)    Awarding compensatory damages; and

(f)    Awarding such other relief as the Court deems just and proper.

## ELEVENTH COUNT
### (Breach of the Duty of Good Faith and Fair Dealing)

143.    Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 142 as if fully set forth herein.

144.    There is an implied duty of good faith and fair dealing in every contract, including the contract between and among the Borough, DePetro and ALKA.

145.    DePetro has made a good faith attempt to fulfill its obligations under the contract, but those efforts have been frustrated by the Borough, ALKA and Rhodes.

146.    By seeking and granting a variance permitting ALKA to install a larger sign than was contemplated by the agreement between the parties, the Borough and ALKA have frustrated DePetro's attempts to fulfill its obligations under the contract.

147.    As a result of the Borough's and ALKA's breach of their implied duty of good faith and fair dealing, DePetro has suffered and will continue to suffer damages, including but not limited to costs associated with the delay in selling Oaklyn Manor.

30

148.    As a result of the Borough's and ALKA's breach of the contract, DePetro is entitled to both a declaration that DePetro is relieved of its obligation to replace ALKA's sign, that DePetro is not required to reimburse ALKA for the cost of installing its non-conforming sign, and that the Borough must merge that portion of ALKA's property where the parking lot was constructed into Block 49, Lot 8 on the Official Tax Map of Oaklyn so that the parking lot may be transferred to the Purchaser together with Oaklyn Manor, and compensatory damages.

WHEREFORE, DePetro demands judgment:

(a)    Declaring that ALKA breached its contract with DePetro by failing to cooperate with DePetro regarding the construction of the new sign;

(b)    Declaring that the Borough breached its contract with DePetro by authorizing ALKA to install a sign that did not conform with the terms of its agreement with DePetro;

(c)    Declaring that, as a result of these breaches, DePetro is not required to install a new sign for ALKA or to reimburse ALKA for its non-conforming sign;

(d)    Ordering the Borough to merge the parking lot into Block 49, Lot 8 on the Official Tax Map of Oaklyn;

(e)    Awarding compensatory damages; and

(f)    Awarding such other relief as the Court deems just and proper.

Dated: May 26, 2022

By: */s/Robert W. Mauriello, Jr.*
    Robert W. Mauriello, Jr.
    Robin Rabinowitz
    GIMIGLIANO MAURIELLO & MALONEY
    A Professional Association
    163 Madison Avenue, Suite 500
    P.O. Box 1449
    Morristown, New Jersey 07962-1449
    (973) 946-8360

    Attorneys for Plaintiffs
    Oaklyn Villas Urban Renewal, LLC and
    DePetro Real Estate Organization LLC

<u>DEMAND FOR TRIAL BY JURY</u>

   Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands trial by jury on all issues triable of right by a jury.

Dated: May 26, 2022

       By: *<u>/s/Robert W. Mauriello, Jr.</u>*
         Robert W. Mauriello, Jr.
         Robin Rabinowitz
         GIMIGLIANO MAURIELLO & MALONEY
         A Professional Association
         163 Madison Avenue, Suite 500
         P.O. Box 1449
         Morristown, New Jersey 07962-1449
         (973) 946-8360

         Attorneys for Plaintiffs
         Oaklyn Villas Urban Renewal, LLC and
         DePetro Real Estate Organization LLC

<u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2</u>

   The undersigned hereby certifies that the matter in controversy is not the subject

of any of action in any court or of a pending arbitration or administrative proceeding.

Dated: May 26, 2022

      By: <u>*/s/Robert W. Mauriello, Jr.*</u>
        Robert W. Mauriello, Jr.
        Robin Rabinowitz
        GIMIGLIANO MAURIELLO & MALONEY
        A Professional Association
        163 Madison Avenue, Suite 500
        P.O. Box 1449
        Morristown, New Jersey 07962-1449
        (973) 946-8360

        Attorneys for Plaintiffs
        Oaklyn Villas Urban Renewal, LLC and
        DePetro Real Estate Organization LLC