IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| OAKLYN VILLAS URBAN RENEWAL, LLC *et al.*, | : : : : | |
| Plaintiff, | : : | Civil No. 22-3177 (RBK/SAK) |
| v. | : : : | **OPINION** |
| BOROUGH OF OAKLYN *et al.*, | : : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendants Peter Rhodes, Ajay Shah, and ALKA Real Estate, LLC (collectively, "Defendants" or "ALKA Defendants")'s Motion to Dismiss Plaintiffs' Amended Complaint ("Motion") (ECF No. 30). For the reasons set forth below, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.   BACKGROUND

#### A.  Factual Background

In March 2003, Defendant the Borough of Oaklyn ("the Borough") adopted its Redevelopment Plan for Block 49, Lots 4, 5, and 6, which included a plan for the historic restoration of Oaklyn Manor, a multi-family building. (ECF No. 28, Am. Compl. ¶ 22). In March 2015, Plaintiff Oaklyn Villas Urban Renewal, LLC ("Oaklyn Villas") was designated the redeveloper of Oaklyn Manor and acquired the property by condemnation initiated by the Borough (*Id.* ¶¶ 4, 29). Oaklyn Villas paid a total of $600,000 for the property. (*Id.* ¶ 29).

1

On November 10, 2015, Oaklyn Villas and the Borough entered into a Financial Agreement, in which the Borough granted Oaklyn Villas a tax exemption in exchange for payment of an annual service charge. (*Id.* ¶¶ 33–35). The Financial Agreement further required that, in the event Oaklyn Villas wanted to sell Oaklyn Manor, the transfer of the terms of the Financial Agreement would need to be approved by Resolution of the Borough Council of the Borough of Oaklyn, "upon whose approval [the Financial] Agreement and its then remaining obligations and the tax exemption of the improvements shall continue, and inure to the benefit of the transferee urban renewal entity." (*Id.* ¶ 36). The Financial Agreement also provided that, for the processing of any request to transfer the Project and the benefits under the Financial Agreement, Oaklyn Villas must pay an administrative fee of 2% of the annual service charge as well as "a reasonable fee for the legal services of the Borough's Attorney." (*Id.* ¶¶ 38–39).

In May 2016, Oaklyn Villas completed the redevelopment of Oaklyn Manor at a total cost of $1.8 million. (*Id.* ¶ 40). On July 11, 2017, the Borough entered into an agreement (the "Parking Lot Agreement") with Oaklyn Villas under which the Borough would acquire a portion of the property adjacent to Oaklyn Manor, owned by Defendant ALKA Real Estate LLC ("ALKA"), on which Oaklyn Villas would construct a parking lot for use by the tenants of Oaklyn Manor. (*Id.* ¶ 44–47).

As part of the Parking Lot Agreement, Oaklyn Villas agreed to compensate ALKA by installing a sidewalk, an LED sign, and a fence on ALKA's remaining portion of the property. (*Id.*). The agreement required Oaklyn Villas' principal, Plaintiff Richard DePetro, to install a single "two-sided LED sign measuring no more than 25 square feet, to be placed consistent with the requirements of the land use laws of the Borough of Oaklyn." (*Id.* ¶ 48). Oaklyn Villas incurred $250,000 in costs in the acquisition and construction of the parking lot. (*Id.* ¶ 49).

In March 2021, ALKA solicited a proposal from a sign-maker that did not conform to some of the requirements of the Parking Lot Agreement. (*Id.* ¶ 50). The proposal indicated that ALKA planned to install both a 25 square foot double-sided light cabinet with LED lighting and translucent vinyl artwork and a 27.6 square foot full color RGB board for a total of 52.6 square feet of signage. (*Id.*). On April 6, 2021, Mr. DePetro notified the Mayor, the Borough Clerk, Mr. Higgins, and Ajay Shah (the owner of ALKA) that the proposed sign violated both the Borough's zoning ordinances and the Parking Lot Agreement. (*Id.* ¶ 51).

On June 18, 2021, ALKA applied to the Borough's Zoning Administrator for a variance permitting ALKA to install a double-sided LED sign measuring approximately 24 square feet and a second changeable-copy sign measuring approximately 20 square feet on its property. (*Id.* ¶ 52). The proposed sign would be 25 feet high, or five feet higher than permitted by the Borough's zoning ordinance. (*Id.*). The proposed signs also exceeded the maximum size allowed by the Borough's zoning ordinance. (*Id.*). Resultingly, the Zoning Administrator denied the request for a variance. (*Id.* ¶ 53).

On December 22, 2021, ALKA's attorney, Defendant Peter Rhodes, appealed the Zoning Administrator's decision. (*Id.* ¶ 56). On January 20, 2022, the Planning Board of Oaklyn held a hearing regarding ALKA's request for a variance, which it ultimately granted in February 2022. (*Id.* ¶ 57–58).

On June 22, 2021, Oaklyn Villas entered into a contract to sell Oaklyn Manor to Success Estates, LLC ("the Purchaser"). (*Id.* ¶ 59). Oaklyn Villas informed the Borough of its intention to request a transfer of the Financial Agreement to the Purchaser, and the Purchaser delivered materials to the Borough describing the Purchaser's experience and qualifications. (*Id.* ¶ 60–63). The managing member of the Purchaser is named Zev Censor. (*Id.* ¶ 64).

Defendant Robert Forbes, who was then the Mayor of the Borough of Oaklyn, appointed himself as well as Defendants Charles Lehman and Dorothy Valianti, both members of the Borough Council, to an Ad Hoc Committee to investigate the Purchaser's application. (*Id.* ¶ 67). On February 10, 2022, the Ad Hoc Committee met with Mr. Censor, his attorney, and Oaklyn Villas, evidently to discuss the Purchaser's application. (*Id.* ¶ 68).

On April 4, 2022, the Mayor, Borough Council, Borough Clerk, and Borough Attorney Timothy J. Higgins discussed the Purchaser's application in a closed session that was not open to the public. (*Id.* ¶ 70). On April 12, 2022, the Ad Hoc Committee held another meeting that was closed to the public and presented its recommendation to the Borough Council. (*Id.* ¶ 71). Although the Borough found that the Purchaser was "competent in the field of commercial real estate ownership and apartment management," the Borough resolved unanimously that transfer of the Financial Agreement was "not in the best interests of the Borough of Oaklyn" because Oaklyn Villas and the Purchase "demonstrated no public policy basis for property tax assistance for a fully functional commercial property . . . ." (*Id.* ¶¶ 71–74). At a May 2, 2022, Borough Council meeting, Mr. DePetro requested that the Borough Council reconsider its denial of Oaklyn Villas' request to transfer the Financial Agreement. (*Id.* ¶ 75). The Borough Council denied to do so, adopting a resolution stating that Mr. DePetro "presented no documents or information different from that which already had been presented prior to [their April 12, 2022 decision]." (*Id.* ¶ 76–77).

Plaintiffs allege that the rejection of the application to transfer the Financial Agreement has "caused significant economic harm," including a "dramatic increase" in mortgage interest rates that "will cost the Purchaser more than $23,000 annually . . . causing both the Purchaser and seller damages." (*Id.* ¶ 78).

In their Amended Complaint, Plaintiffs bring various civil rights causes of action under both federal and New Jersey state law (Counts I–VI), as well as several state contract claims (Counts VII–VIII, X–XI) and a general claim of violation of New Jersey law (Count IX). In short, Plaintiffs allege that "the Borough, the Mayor, the Borough Council, the Borough Clerk, and the Borough Attorney [collectively, the "Borough Defendants"] have deprived Oaklyn Villas of its constitutionally protected rights to property and equal protection by irrationally and summarily denying Oaklyn Villas' request to sell [Oaklyn Manor] . . . ." (*Id.* ¶ 1).

Against the ALKA Defendants, specifically, Plaintiffs allege breach of contract, violation of the duty of good faith and fair dealing, more generalized "violations of New Jersey law," and, in its civil rights claims, that the ALKA Defendants "acted in concert with the Borough Defendants to deprive Oaklyn Villas of its property rights in Oaklyn Manor." (*Id.* ¶ 108). The claims against the ALKA Defendants are encompassed in Counts II–V and IX–XI, which we review for the sake of this Motion.

### B. Procedural History

Plaintiffs filed their initial Complaint on May 26, 2022. (ECF No. 1). All Defendants jointly filed a Motion to Dismiss on August 3, 2022. (ECF No. 10). Following briefs in opposition by the Plaintiffs (ECF Nos. 14–15), all Defendants jointly filed a Motion for More Definite Statement under Federal Rule of Civil Procedure 12(e) on September 6, 2022. (ECF No. 16). Plaintiffs filed a brief opposing on September 19, 2022. (ECF No. 17).

This Court issued an Opinion granting in part and denying in part Defendants' Motion for More Definite Statement, ordering that Plaintiffs shall file an amended complaint "that properly places Defendants on notice of the claims against them" by March 31, 2023. (ECF Nos. 26–27). On March 31, 2023, Plaintiffs filed an Amended Complaint. (ECF No. 28). The ALKA

5

Defendants filed the instant Motion to Dismiss on April 17, 2023. (ECF No. 30). Plaintiffs filed a brief opposing the Motion on May 1, 2023. (ECF No. 31). The matter has been fully briefed and is now ripe for adjudication.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Moreover, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

### III. DISCUSSION

The ALKA Defendants argue that the claims against them (Counts II–V, IX–XI) should be dismissed for failure to state a claim.[1] (ECF No. 30 at 9, 11). We address each Count in turn.[2]

#### A. Counts II–V

The ALKA Defendants argue that Plaintiffs' federal and state civil rights claims should be dismissed because Plaintiffs failed to plead facts establishing that the Defendants, who are private individuals, assumed the color of law and deprived Plaintiffs of any constitutional rights.

Defendant Rhodes is an attorney with the firm of Cahill, Wilinsky, Rhodes and Joyce. (Am. Compl. ¶ 16). Defendant Shah is the managing member of Defendant ALKA, a limited liability company. (*Id.* ¶¶ 17–18). Rhodes is alleged to have advised ALKA to apply to the Borough for a variance that is allegedly in violation of the agreement between ALKA, Plaintiffs, and the Borough. (*Id.* ¶ 56, 169–71). Plaintiffs allege that "[i]n applying for and receiving the variance . . . ALKA breached the contract provision requiring it to 'fully cooperate' with [Plaintiffs]." (*Id.* ¶ 171). Plaintiffs also allege that, despite making a "good faith attempt to fulfill its obligations under the contract . . . those efforts have been frustrated by the Borough and the ALKA Defendants." (*Id.* ¶ 177).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

---

[1] The ALKA Defendants also purport to "seek[] filing fees, and legal fees, against Plaintiffs for this frivolous filing as it relates to Moving Defendants." (ECF No. 30 at 2). Because such a request would require a separate (and yet unfiled) request for sanctions under Federal Rule of Civil Procedure Rule 11, we do not consider the Defendants' request for filing fees and legal fees at this stage.

[2] Counts I and VI–VIII of Plaintiffs' Amended Complaint are explicitly directed only to the Borough Defendants. (Am. Compl. at 16, 28–33).

7

> thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988). It is not disputed that Plaintiffs here allege violations of rights secured by the Constitution. (*See* Am. Compl. ¶ 1) (alleging violations of Plaintiffs' "constitutionally protected rights to property and equal protection"). Instead, Defendants argue that the state-action requirement has not been satisfied because the Complaint does not plead facts sufficient to allege that Defendants' conduct was committed while acting under color of state law.

"Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal citations and quotation marks omitted). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins,* 487 U.S. 42, 49 (1988). The Third Circuit has held that "a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983." *Abbott v. Latshaw*, 164 F.3d 141, 147–48 (3d Cir. 1998); *see also Reitz v. County of Bucks*, 125 F.3d 139, 148 (3d

8

Cir. 1997) (private parties who act "as a 'joint participant' in the challenged activity with the state . . . can be found to have acted under color of state law and to be liable under § 1983.").

Plaintiffs argue Defendants are subject to § 1983 liability because they acted "in conjunction" with the Borough in depriving Plaintiffs of their constitutionally protected rights. (Am. Compl. ¶ 129, 132). Plaintiffs argue further that "Defendants and the Borough worked together to delay, complicate, and prevent the proposed sale of Oaklyn Manor to a qualified buyer." (ECF No. 31 at 12).

We are not convinced that the Amended Complaint pleads facts showing that Defendants "participate[d] in a joint conspiracy with state officials to deprive [Plaintiffs] of a constitutionally protected right." *See Abbott*, 164 F.3d at 147–48. In *Abbott*, the plaintiff's ex-wife, Laurie Latshaw, "enlisted" the aid of Constable Albert Diehl and three Pennsylvania police officers in "her plan to take a van from her former husband [the plaintiff]." *Id.* at 143. The Third Circuit held that Latshaw, despite being a private individual, "acted under color of state law" for purposes of § 1983 because the complaint "depicted joint action by Latshaw and Diehl in effectuating the recovery of the van" and because there was evidence that Latshaw "paid [Diehl] to help her take possession of the van." *Id.* at 148. The Third Circuit has also expressed approval of finding § 1983 liability for "conduct as seemingly benign as towing a vehicle at the direction of a police officer." *Reitz*, 125 F.3d at 148.

The conduct the ALKA Defendants are alleged to have engaged in is not similar to the joint conduct involved in paying a state official to deprive a person of his property, as in *Abbott*, or acting under the direction of a police officer, as referenced in *Reitz*. Here, Counts II–V are based on allegations that the Borough "rejected Oaklyn Villas' request to sell Oaklyn Manor and transfer the Financial Agreement to the Purchaser." (Am. Compl. ¶ 86). The ALKA Defendants

9

are not alleged to have been involved in that decision in any way—that is, Plaintiffs have not adequately plead how ALKA Defendants acted "in conjunction" with the Borough Defendants to deprive Plaintiffs of a constitutional right. Although the ALKA Defendants are alleged to have violated a contract with Plaintiffs in seeking a variance with the Borough, these allegations do not form the basis of the § 1983 claims, and, moreover, we are not convinced that such conduct would constitute a "joint conspiracy" such that Defendants would be considered to be acting under color of state law. *See Abbott*, 164 F.3d at 147–48.

Nor can Defendants prevail on their state civil rights claims under N.J. Stat. Ann. § 10:6-2(c), as alleged in Counts IV and V.³ It is long established that this Court analyzes claims under § 10:6-2(c) as it would for claims under § 1983. *See Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 365 (D.N.J. 2013) ("This district has repeatedly interpreted [§ 10:6-2(c)] analogously to § 1983.") (quoting *Pettit v. New Jersey,* 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011)). As such, we decline to find state action under § 10:6-2(c) for the same reasons we decline to find state action under its federal analogue.

Accordingly, because the Complaint does not allege facts showing that the ALKA Defendants acted under color of state law for purposes of § 1983 or § 10:6-2(c), we dismiss Counts II–V against the ALKA Defendants in their entirety.

---

³ N.J. Stat. Ann. § 10:6-2(c) provides:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileged or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

### B. Count IX

Next, the ALKA Defendants argue that Count IX, which simply asserts a claim of "violations of New Jersey law," should be dismissed because it "is unnecessary, lacks foundation, and lacks a cognizable cause of action." (ECF No. 30 at 10). Further, they argue Count IX is "duplicative of Counts Seven, Eight, Ten and Eleven of Plaintiffs Complaint," which all allege specific violations of New Jersey law. (*Id.*). The ALKA Defendants assert that Count IX does not satisfy Rule 8's pleading requirements because it fails to "provide Moving Defendants fair notice of what this claim is, and the grounds that it rests upon." (*Id.*). Plaintiffs do not appear to dispute the ALKA Defendants' arguments regarding Count IX. Because we agree with the ALKA Defendants that Count IX does not satisfy the Rule 8 requirement that a complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555, Count IX of Plaintiffs' Complaint against the ALKA Defendants will also be dismissed.

### C. Counts X–XI

Counts X and XI surround Plaintiffs' claims that the ALKA Defendants breached the terms of the Parking Lot Agreement and violated the doctrine of good faith and fear dealing.[4]

First, Defendants argue that Count X, the breach-of-contract claim, must be dismissed with regard to Defendant ALKA. To state a claim for breach of contract in New Jersey,[5] a party

---

[4] Because we have jurisdiction to rule on the merits in Counts X–XI, *see* 28 U.S.C. § 1367(a), we decline to address either the ALKA Defendants' jurisdictional arguments for dismissal (*see* ECF No. 30 at 14) or the relevance of New Jersey's "entire controversy doctrine" to the instant Motion (*see* ECF No. 31 at 12).

[5] The Court follows New Jersey state law in its analysis of Plaintiffs' contractual claims, as the Parking Lot Agreement was formed in and concerns matters relating principally to New Jersey. *Portillo v. Nat'l Freight, Inc.*, 323 F. Supp. 3d 646, 658 (D.N.J. 2018) ("New Jersey has adopted 'the most significant relationship' test set out in the Restatement (Second) of Conflict of Laws.") (quoting *P.V.* ex rel. *T.V. v. Camp Jaycee*, 962 A.2d 453 (N.J. 2008)). We note this for the sake of clarity, as the parties do not dispute choice-of-law or Plaintiffs' assertion that the Parking Lot Agreement constitutes a contract under New Jersey law. (*See* Am. Compl. ¶ 165).

11

must allege (1) a contract between the parties; (2) breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual obligations. *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002).

There is no dispute that a contract existed between Defendant ALKA and the Plaintiffs. However, Defendants argue that Plaintiffs failed to establish that "[a] mere request for a variance" constitutes a breach of that obligation. (ECF No. 30 at 12). Moreover, Defendants argue that Plaintiffs "failed to articulate any cognizable damages deriving from" ALKA's request for a variance. (*Id.*). Lastly, Defendants argue that the requirement that the party bringing a breach of contract claim perform its own contractual obligations is not met, as demonstrated by the fact that Plaintiffs' requested relief is a judgment that Plaintiffs "do not have to perform their duties under the contract due to the issued variance." (*Id.*).

Plaintiffs respond that the Amended Complaint satisfies the pleading requirements for a breach of contract claim because:

> (1) the parties entered into an agreement for the construction of a parking lot for Oaklyn Manor, (2) ALKA failed to cooperate with DePetro regarding the construction of ALKA's new sign by attempting to procure two signs when the contract authorized only one, and (3) DePetro has sustained damages to the extent that it is compelled to pay for a non-conforming sign, as well as damages due to the delay caused by ALKA's request for a variance.

(ECF No. 31 at 14–15) (*citing* Am. Compl. ¶¶ 164–74). Plaintiffs do not appear to respond to Defendants' argument that the fourth element, which requires an allegation that Plaintiffs met their obligations under the contract, is not met.

To begin, we disagree with Defendants' bald assertion that "[a] mere request for a variance does not constitute a breach," a proposition which Defendants neither explain further nor cite any case law to support. (ECF No. 30 at 12). As Plaintiffs explain, the alleged breach occurred in ALKA's act of "requesting a variance so that Defendants can force DePetro to buy

12

ALKA more signs than authorized under the contract, all while ignoring entreaties from DePetro to discuss installing a conforming sign." (ECF No. 31 at 15). Plaintiffs allege that they were required under the contract to replace ALKA's sign, in accordance with specific limitations such as that the sign would measure no more than 25 square feet and would be consistent with the land use laws of the Borough. (Am. Compl. ¶ 168). They allege further that Defendant ALKA applied to the Borough for a variance because the sign it wanted to install exceeded the maximum size allowed by local ordinance and that the proposed sign exceeded 25 square feet. (*Id.* ¶ 169). In this way, they allege that ALKA breached the contract by "applying for and receiving the variance, and demanding that DePetro install a sign that exceeded the requirements laid out in the contract." (*Id.* ¶ 171).

But we agree with Defendants that the third and fourth elements of a breach of contract claim are not met by the pleadings in the Amended Complaint. As to the damages requirement, Plaintiffs argue that "DePetro has suffered and will continue to suffer damages" as a result of the variance request. (*Id.* ¶¶ 173, 179). Significantly, however, the Complaint does not allege that DePetro has paid for a non-conforming sign, and we were unable to locate any allegations in the Amended Complaint that Plaintiffs have incurred any other costs resulting from the alleged breach. As to the fourth requirement, that Plaintiffs satisfied their obligations under the contract, the Amended Complaint seeks "a declaration that DePetro is relieved of its obligation to replace ALKA's sign." (*Id.* ¶¶ 174, 180). Nevertheless, we agree with Defendants that this requested relief amounts to a declaration that Plaintiffs are not obliged to perform under the contract, indicating that Plaintiffs have not at this time satisfied their obligations under the contract.

Accordingly, having found that the Amended Complaint does not plead facts establishing all four elements of a breach of contract claim, we dismiss Count X in its entirety against all three of the ALKA Defendants.

Next, Defendants argue that Count XI, which asserts a claim of violation of the duty of good faith and fair dealing, must also be dismissed. This covenant "mandates that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1074 (N.J. Super. Ct. App. Div. 2002) (internal citations and quotation marks omitted). "A party breaches the implied covenant when it exercises its contractual functions arbitrarily, unreasonably, or capriciously and with an improper motive." *Wilmington Sav. Fund Soc'y, FSB v. Daw*, 265 A.3d 178, 187 (N.J. Super. Ct. App. Div. 2021) (internal citations and quotation marks omitted).

We have already found that Defendant ALKA's conduct in requesting a variance likely violated the terms of the Parking Lot Agreement. Insofar as the conduct violated the doctrine of good faith and fair dealing, we agree with Plaintiffs that ALKA's conduct could be considered "arbitrary, unreasonable, and capricious, and lacking a proper motive." *See id.* The Amended Complaint further alleges in Count XI that ALKA's conduct contributed to "the delay in selling Oaklyn Manor," (Am. Compl. ¶ 179), thus injuring the right of the other party to receive the fruits of the contract. *See Seidenberg*, 791 A.2d at 1074. We therefore decline to dismiss Count XI of the Complaint against Defendant ALKA.

Next, Defendants argue that both contractual claims must be dismissed as to Defendants Rhodes and Shah because they were not in privity of contract with Plaintiffs in the Parking Lot Agreement. (ECF No. 30 at 11). Because we have already dismissed Count X in its entirety, we turn our focus solely to the relation of Defendants Rhodes and Shah to Count XI.

14

Defendants argue that, because the Complaint does not allege a contract between Plaintiffs and Defendants Rhodes and Shah, the contractual claims must be dismissed as to them. Plaintiffs counter by stating that Defendants' argument is "unavailing," because "adherence to the fiction of separate corporate existence would sanction fraud or promote injustice." (ECF No. 31 at 14 n.2 (citing *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 768 (D.N.J. 2013)). Plaintiffs argue that because Shah is the sole shareholder of ALKA, "maintaining the corporate fiction would allow Shah to evade personal liability for his role" in the dispute. (*Id.*). With regard to Defendant Shah, we agree.

Defendant Shah is the owner and "managing member" of ALKA. (Am. Compl. ¶ 17, 51). Although Shah is technically a nonparty to the contract in his individual capacity, "traditional principles of state law" allow a contract to be enforced by or against nonparties to the contract by piercing the corporate veil. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *see also Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (recognizing, pursuant to *Arthur Andersen*, that "a contract may sometimes be equitably enforced by or against even nonparties"). Plaintiffs allege—and the ALKA Defendants do not contest—that the Parking Lot Agreement constitutes a contract under New Jersey law. (Am. Compl. ¶ 165). In New Jersey, state law "allows for piercing the corporate veil to hold shareholders liable when there is a unity of interest." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. at 768. Given that Defendant Shah is the managing member of ALKA, it is plausible that such a unity of interest exists in this case. Accordingly, we decline to dismiss Defendant Shah from Count XI.

Lastly, Plaintiffs do not allege any form of liability against Defendant Rhodes other than the fact that ALKA acted "on the advice" of Rhodes when applying to the Borough for a variance. This claim is insufficient to establish a contractual relationship through privity or by

piercing the corporate veil. Nor would piercing ALKA's corporate veil have any impact on Rhodes, as Rhodes was acting merely as ALKA's attorney throughout the events at issue. (Am. Compl. ¶ 56). It follows that because there was no contractual relationship between Rhodes and the Plaintiffs, there was neither breach of contract nor violation of the doctrine of good faith and fair dealing. Therefore, we dismiss Count XI as to Defendant Rhodes.

In sum, we dismiss all Counts in Plaintiffs' Amended Complaint against Defendant Rhodes. Regarding Defendants ALKA and Shah, we dismiss all Counts except for Count XI.

### IV.     CONCLUSION

For the reasons expressed above, the ALKA Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**. An Order follows.


Dated: 12/24/2023                                         /s/ Robert B. Kugler
                                                                           ROBERT B. KUGLER
                                                                           United States District Judge